Merrill M. KISTNER and Steam Iron Corporation, Plaintiffs,

v.

D. BURT, trading as Corey Avenue Hardware, and Sunbeam Corporation, Defendants.

Civ. No. 3217.

United States District Court
S. D. Florida,
Tampa Division.

March 29, 1960.

Askew, Earle & Holley, St. Petersburg, Fla., Daniel V. Mahoney, New York City, Howard H. Darbo, Chicago, Ill., for plaintiff.

MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., Walther E. Wyss, Mason, Kolehmainen, Rathburn & Wyss, George R. Clark, Chicago, Ill., for defendants.

WHITEHURST, Chief Judge.

The above-entitled cause having come on regularly for trial before the Court, sitting without a jury, and the Court, after full consideration of the evidence, including the testimony of witnesses and the physical and documentary exhibits as well as the arguments and briefs of counsel, now makes the following findings of fact, conclusions of law and judgment:

Findings of Fact

1. Plaintiff, Steam Iron Corporation, is a Florida corporation, having its place of business at 40–42 77th Avenue West, St. Petersburg 6, Florida.

2. Plaintiff, Merrill M. Kistner, is the principal stockholder in Steam Iron Corporation and resides at 40–42 77th Avenue West, St. Petersburg 6, Florida.

3. Defendant, D. Burt, is an individual doing business as Corey Avenue Hardware at 353 Corey Avenue, St. Petersburg Beach, Florida.

4. Sunbeam Corporation is an Illinois corporation, having its principal place of business at 5600 Roosevelt Road, Chicago 50, Illinois. Sunbeam Corporation, although named as a defendant in the complaint, was not served with process and has not appeared.

5. Plaintiff, Steam Iron Corporation, is the owner of patent No. 2,313,382, granted to Merrill M. Kistner on March 9, 1943.

6. Plaintiff, Steam Iron Corporation, is the owner of patent No. 2,384,839,

granted to Merrill M. Kistner on September 18, 1945.

7. Both Kistner patents in suit are directed broadly to flash type steam irons wherein water is dropped on a heated surface and is flashed into steam. Steam irons of the flash type were well known in the art long prior to the filing dates of the patents in suit.

8. On August 13, 1957, defendant, D. Burt, sold one Sunbeam Model S4A steam and dry iron within this district.

9. Plaintiffs alleged that Sunbeam Model S4 infringed claims 1 and 8 of Kistner patent No. 2,313,382 and claim 15 of Kistner patent No. 2,384,839, and moved to amend their complaint at the time of trial to incorporate Sunbeam iron Model S4A, but since the answer of the defendant, D. Burt, had admitted that both Sunbeam models S4 and S4A had been sold, the motion to amend was denied inasmuch as it did not raise any new issue.

10. Claim 1 of Kistner patent No. 2,313,382 is a combination claim directed to a steam iron having steam generating means, heating means, a water reservoir, normally open valve means located between the reservoir and the steam generating means, and means for supporting the iron in an upended position. The above-mentioned elements of the steam iron are so arranged that steaming automatically stops when the iron is upended.

11. Claim 8 of Kistner patent No. 2,313,382 is a combination claim directed to a steam iron having steam generating means, heating means including an area of concentrated heat energy, a water reservoir, normally open valve means located between the reservoir and the steam generating means, and means for supporting the iron in an upended position. As in claim 1, the above-mentioned elements are so arranged that steaming automatically stops when the iron is upended.

12. On or about May 10, 1938, and prior to any of plaintiff Kistner's work on steam irons, he was given a flash type steam iron (DX. 106) made by Hot-Flash, Inc. of St. Louis, Missouri, which iron included all of the elements of claims 1 and 8 of Kistner patent No. 2,313,382. Specific features of this Hot-Flash iron included flashing water into steam by dropping the water on the hottest portion of the steam generating chamber, providing a tortuous steam passageway for drying the steam, and arranging the parts so that steaming stopped when the iron was upended.

13. At the time Kistner was given the Hot-Flash iron, he became a stockholder in the company, and he was also given a separate heating element, a separate sole plate, and a list of parts included in the iron, and he was carefully instructed in the operation and structure of the iron to enable him to present the iron to potential manufacturers.

14. Patent applications (DX. 103 and DX. 104) were filed by Douglas P. Jones and Harry A. Geauque, and by Douglas P. Jones, respectively, while working for Hot-Flash, Inc., or its predecessor company. Prior to the manufacture of the Hot-Flash iron given to Kistner in May, 1938, Hot-Flash, Inc., or its predecessor company, had built and successfully tested another flash type steam iron (DX. 70), which iron also included all of the elements of claims 1 and 8 of Kistner patent No. 2,313,382. The aforesaid patent applications describe in detail the construction and operation of the Hot-Flash irons.

15. Some five months after he was given the Hot-Flash iron (DX. 106), Kistner filed the application which matured as Kistner patent No. 2,313,382. In the prosecution of this application he attempted to obtain and did obtain claims covering the subject matter embodied in the Hot-Flash Iron.

16. During the prosecution of the application which matured as Kistner patent No. 2,313,382, Kistner made repeated attempts to purchase the patent applications covering the Hot-Flash irons, which applications disclosed subject matter identical to that being claimed by Kistner as his own invention in his pending patent application.

17. When the first discovery depositions of the plaintiff Kistner were taken, where inquiry was made concerning the circumstances surrounding the making of his alleged steam iron inventions, Kistner made no reference whatsoever to the Hot-Flash iron development or his prior intimate connection with it, but instead he testified that he was the true inventor of all features claimed in his patent No. 2,313,382 and that, as to these features, he was "the author of them all."

18. Only after defendant subsequently produced evidence of the Hot-Flash irons and Kistner's association therewith did plaintiffs disclaim claim 1 of patent No. 2,313,382.

19. The only difference between disclaimed claim 1 and claim 8 is the characterization in claim 8 of the steam generating means as comprising an "area of concentrated heat energy," but both experts testified that the Hot-Flash irons generated steam by dropping water on an area of concentrated heat energy.

20. The Sunbeam S4A steam and dry iron is designed to operate with a uniform sole plate temperature when being used as a dry iron so as to avoid scorching the material being ironed.

21. Since the term "an area of concentrated heat energy" in claim 8 means the hotter or hottest portion according to plaintiffs' expert, the Sunbeam S4A steam and dry iron does not have an area of concentrated heat energy, for when it is operated as a steam iron the portion of the steam generating chamber upon which the water impinges is the coolest portion of the sole plate. This is accomplished in part by the use of a heating element which has been stretched at the nose portion thereof so as to produce less heat per unit length.

22. If claim 8 is construed so broadly as to cover the Sunbeam S4A iron, then it is fully anticipated by Schaefer patent No. 1,962,940, which was never considered by the Patent Office in connection with Kistner patent No. 2,313,382.

23. If claim 8 is construed so broadly as to cover the Sunbeam S4A iron, then the sole difference between it and Skolnik patent No. 1,969,583 is the substitution of a normally open valve for the normally closed valve of Skolnik, which would have been obvious to the mechanic or designer in the steam iron art.

24. Claim 15 of Kistner patent No. 2,384,839 is directed not to a steam iron but merely to a sole plate assembly having a nose portion with a central area for water reception and steam generation, together with a generally U-shaped cast-in sheath-type heating element and means cooperating with the sole plate to direct the flow of steam rearwardly for drying or superheating the steam.

25. The Patent Office Examiner and the Patent Office Board of Appeals held unpatentable a claim in the Kistner application (claim 37) which differed from claim 15 solely in the provision of means for directing the steam rearwardly (DX. 141). Numerous prior art patents, such as Skolnik 1,969,583, Mitzman 2,021,606, Marvin 2,231,275, and Quertainmont French Patent No. 44,017, teach the conducting of steam generated in the steam generating zone rearwardly within the confines of the area heated by the heating element in order to superheat and dry it. It would be obvious to someone skilled in the steam iron field to add to unpatentable claim 37 any of the well-known means for directing steam rearwardly.

26. As early as July, 1937, General Electric Company, at its plant in Ontario, California, embarked on an extensive development program of flash type steam irons, and prior to March 9, 1939, they built and successfully tested several flash type steam irons including two physical models in evidence (DX. 14, DX. 15). The building and successful testing of these steam irons is established by the testimony of four witnesses who actively participated in the designing and testing of the irons. This testimony is corroborated by dated drawings and the steam irons themselves.

27. Defendant's Exhibit 14 comprises a sole plate assembly having all of the elements of claim 15, namely, a nose por-

tion with a central area for water reception and steam generation, together with a generally U-shaped cast-in sheath-type heating element and means cooperating with the sole plate to direct the flow of steam rearwardly for drying or superheating the steam.

28. Defendant's Exhibit 15 is a combination flash and boiler type steam iron which, however, has all of the elements of claim 15, namely, a nose portion with a central area for water reception and steam generation, together with a generally U-shaped cast-in sheath-type heating element and means cooperating with the sole plate to direct the flow of steam rearwardly for drying or superheating the steam.

29. The alleged invention of claim 15 resides in the provision of means to direct the steam in a manner so as to dry or superheat it. This was taught by the Hot-Flash iron given to Kistner in May of 1938, which provided means to direct the flow of steam rearwardly for the same purpose, and wherein the "path through which the steam passes from the steam generating chamber to the material being ironed is a tortuous one".

30. Electrical heating elements of varied types and shapes were used in dry and steam irons long prior to Kistner. Cast-in U-shaped sheath-type heating elements were also common prior to Kistner for use in both steam irons and dry irons. Reingruber et al. patent No. 2,201,115, for example, teaches the equivalency of a number of different types of heating elements in electric irons.

31. The testimony establishes that it would be obvious to a mechanic or designer skilled in the steam iron art to replace the electrical heating element of Skolnik patent No. 1,969,583 with the U-shaped cast-in sheath-type heating element of Tisnerat et al. patent No. 2,269,-957, which would result in a steam iron having every element of claim 15 of Kistner patent No. 2,384,839.

32. The testimony establishes that it would be obvious to a mechanic or designer skilled in the steam iron art to replace the electrical heating element of Skolnik patent No. 1,969,583 with the U-shaped cast-in sheath-type heating element of Reingruber et al. patent No. 2,-201,115, which would result in a steam iron having every element of claim 15 of Kistner patent No. 2,384,839.

33. The testimony establishes that it would be obvious to a mechanic or designer skilled in the steam iron art to replace the electrical heating element of Skolnik patent No. 1,969,583 with the U-shaped heating element of Quertainmont French Patent No. 38,162 which is wrapped around the steam generating chamber and which would result in a steam iron having the equivalent of every element of claim 15 of Kistner patent No. 2,384,839.

34. Kistner never disclosed to the Patent Office his knowledge of the Hot-Flash iron, and in February, 1943, he filed a supplemental oath in the application then pending in the Patent Office which matured into his patent No. 2,313,-382 to the effect that he was the inventor of claims 1 and 8, even after his attorney explained to him the purpose and function of said oath and even though he had attempted to purchase the patent rights to the Hot-Flash irons.

35. Kistner continuously consulted and conferred with his patent attorney as to the prosecution of the applications which matured as the two patents in suit and was aware of the scope of the protection being sought therein.

36. The Patent Office Examiners who issued the Kistner patents in suit had no knowledge of and, therefore, never considered the prior art Hot-Flash irons or the prior art General Electric flash type steam irons.

37. Kistner had the Hot-Flash iron (DX. 106) in his possession continuously from 1938, but failed to produce this iron or reveal its existence until its existence was discovered through independent efforts on the part of defendant's counsel.

38. Although Kistner granted licenses to others to manufacture steam irons, such is of little evidentiary value, be-

cause there is no evidence that such licensees had any knowledge of the Hot-Flash irons prior to taking said licenses. Further, plaintiffs admitted at the trial that the irons of all the licensees were covered by claim 1 of Kistner's patent No. 2,313,382, which said claim 1 was disclaimed in this action long after the execution of said licenses.

39. It is established by all of the evidence that Kistner's failure to reveal the Hot-Flash iron to the Patent Office and his attempt to conceal the Hot-Flash iron from this Court during discovery depositions were deliberate acts.

### Conclusions of Law

1. This Court has jurisdiction of the subject matter and of the parties Steam Iron Corporation, Merrill M. Kistner, and D. Burt trading as Corey Avenue Hardware.

2. Claim 8 of Kistner patent No. 2,313,382 is invalid.

3. Claim 15 of Kistner patent No. 2,384,839 is invalid.

4. Claim 8 of Kistner patent No. 2,313,382 is not infringed by the Sunbeam S4 or S4A steam and dry irons.

### Judgment

In consideration whereof, it is hereby ordered, adjudged and decreed that judgment be and it is hereby entered in favor of the defendant, D. Burt trading as Corey Avenue Hardware, and that the complaint and action of the plaintiffs be and the same is hereby dismissed with prejudice; and that the relief sought by the counterclaim filed by the defendant, to the extent not hereinbefore allowed, is hereby denied.

The Court hereby reserves and separates from this action the separate issue of the allowance of reasonable attorneys' fees to the defendant pursuant to the provisions of 35 U.S.C. § 285, which issue shall be determined by the Court upon timely application by the defendant after reasonable and proper notice to the plaintiffs.

The Clerk of this Court is hereby authorized to tax costs against the plaintiffs upon timely application therefor.